IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAVETTE M. FRANKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1174-M |
| | § | |
| BAC HOME LOANS SERVICING, LP, | § | |
| *formerly known as* Countrywide Home | § | |
| Loans, Servicing, LP, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Standing Order of Reference*, filed September 15, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court for recommendation is *Defendant's Motion for Summary Judgment*, filed January 10, 2012 (doc. 39). Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

This lawsuit arises out of an allegedly improper foreclosure sale of the real property located at 926 Thistle Green Lane, Duncanville, Texas 75137 (the property). (Second Amended Complaint, hereinafter complaint or Compl.) *Pro se*[1] plaintiff Lavette M. Franklin (Plaintiff) asserts claims for breach of contract, anticipatory breach of contract, violations of the Texas Debt Collection Practices Act (TDCPA) and Texas Deceptive Trade Practices Act (DTPA), unreasonable collection efforts,

---

[1] Although Plaintiff was originally represented by attorneys, the attorneys were discharged on August 24, 2011. (*See* doc. 24.)

suit to quiet title, trespass to try title, and wrongful foreclosure against defendant BAC Home Loan Servicing, LP, formerly known as Countrywide Home Loan Servicing, LP (Defendant).  (*Id.* at 4-14.)  She also asserts that Defendant waived its right to foreclose, (*id.* at 7-8), and seeks an accounting of all transactions on her mortgage loan, a declaratory judgment that the foreclosure was wrongful, and damages with attorney's fees and costs (*id.* at 13-15).

Plaintiff purchased the property at issue on July 31, 2007, with a 30-year mortgage loan in the amount of $198,333.00 from Allied Home Mortgage Capital Corporation ("Allied").  (App. at 17, 46-48, 79-80.)  Plaintiff's husband and attorney-in-fact executed, on her behalf, a promissory note (the note) requiring her to make monthly principal and interest payments in the amount of $1,386.77, and a deed of trust granting Allied a security interest in the property.  (*Id.* at 17-18, 46-60, 81-91.)  Plaintiff agreed to pay an additional monthly amount for escrow items such as property taxes and hazard insurance.  (*Id.* at 17, 82.)

After the loan's origination, Plaintiff made only one mortgage payment. (*Id.* at 19.) Defendant began servicing her mortgage loan when she was not in default.  (*Id.* at 25.)  On or about December 6, 2007, Defendant sent her a letter by certified mail informing her of her default on the loan, her right to cure the default, the amount needed to cure the default, and the deadline to do so. (*Id.* at 18-21, 23, 25-26, 68-69.)  It also conducted a face-to-face-meeting with her, after calling her and visiting the property to arrange that meeting.  (*Id.* at 22.)  However, Plaintiff failed to cure the default, and instead filed for bankruptcy on multiple occasions to avoid foreclosure.  (*Id.* at 26.)

Defendant also engaged in loss mitigation efforts and attempted to assist Plaintiff with her delinquent mortgage loan through a loan modification and a special forbearance plan.  (*Id.* at 18, 22, 24-25, 65-69.)  However, Plaintiff failed to cooperate by providing the necessary information and

did not qualify for a loan modification or other relief. (*Id.* at 24-25.) Defendant never promised to modify her loan, to refrain from conducting foreclosure activities while it was exploring loss mitigation options, or to assist her if she dismissed her bankruptcy case. (*Id.* at 24-26.)

On or about March 1, 2010, Defendant's foreclosure counsel, Barrett Daffin Frappier Turner & Engel, LLP (Barrett), sent Plaintiff a notice of acceleration via certified mail that also advised her of the intent to sell the property at a foreclosure sale on April 6, 2010. (*Id.* at 18, 20-21, 70-75, 77-78, 92-97.) Plaintiff did not tender, and was not able to tender, the delinquent or accelerated amount. (*Id.* at 19-20, 26.) Defendant – who was both the mortgagee and mortgage servicer at the time – therefore accepted all partial payments tendered for the loan, foreclosed on the property, and purchased the property at the April 6, 2010 foreclosure sale. (*Id.* at 18-19, 23, 25-27, 98-100.) The total amount of debt associated with the loan at the time was at least $256,326.10. (*Id.* at 19.)

On May 14, 2010, Plaintiff filed this action in state court. (*See* doc. 1.) On June 14, 2010, she removed the action to this court on the basis of diversity jurisdiction. (*Id.*) Because of the filing of this action, Defendant did not complete eviction proceedings against Plaintiff, who has continued to use the property since 2007, and has not made any mortgage payments from 2007 to 2010, or rent payments after the April 2010 foreclosure. (App. at 17, 19-20.) Since the filing of this action, she has repeatedly failed to respond to discovery or comply with court orders.

Defendant now moves for summary judgment on all of Plaintiff's claims against it. (doc. 39.) Plaintiff has failed to respond, even after Defendant filed a notice of her failure to respond. (*See* doc. 43.) The motion is now ripe for recommendation.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines*

4

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).[2]

Where, as here, the nonmovant fails to respond to the motion for summary judgment, such failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In addition, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002).

---

[2] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

## III. BREACH OF CONTRACT

Defendant first moves for summary judgment on Plaintiff's breach of contract claim, which is based on assertions that Defendant violated § 51.002(d) of the Texas Property Code and various U.S. Housing and Urban Development (HUD) regulations, allegedly incorporated into the note and deed of trust, as well as the requirement of good faith and fair dealing implicit in every contract.[3] (Mot. Br. at 11-18, 29-30.)

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).  Defendant argues that there is no genuine issue of material fact with respect to the third element of the claim because, contrary to Plaintiff's allegations in her complaint, it complied with the Texas Property Code and the HUD regulations, and did not breach any duty of good faith and fair dealing.  (Mot. Br. at 11-16, 29-30.)

### A.  Texas Property Code § 51.002

Defendant does not argue that the provisions of the Texas Property Code are not incorporated into in the note and deed of trust, nor that their violation provides a basis for a breach of contract claim.  (Mot. Br. at 12-14.)  It argues instead that it provided Plaintiff the notices required by Tex. Prop. Code § 51.002.  (*Id.*)

Section 51.002 of the Texas Property Code requires a lender to provide written  notice of

---

[3]  Although Plaintiff also asserts under her breach of contract claim that the note and deed of trust were subject to the Fair Housing Act and Real Estate Settlement Procedures, she does not allege any specific violations constituting a breach of the note or deed of trust.

default and intent to accelerate, specify the action required to cure the default, and give the debtor

an opportunity to cure the default within a minimum of 20 days. *Reed v. Litton Loan Servicing, LP*,

2011 WL 817357, at *4 (E.D. Tex. 2011) (citing Tex. Prop. Code § 51.002(d)). If the lender invokes

the power of sale under a security instrument, the lender must also provide notice to the borrower

of the time and place of the foreclosure sale at least 21 days prior to the date designated for the sale.

*See id.* (citing Tex. Prop. Code § 51.002(b)).  The notices must be sent by certified mail.  *See* Tex.

Prop. Code. § 51.002(b)(3) & (d).  Service of a notice by certified mail is complete when the notice

is deposited in the United States mail.  *Id.*, § 51.002(e).

To show that it sent the notice of default and intent to accelerate required by § 51.002(d),

Defendant points to a letter dated December 6, 2007, that notified Plaintiff of her default, provided

an amount required to cure the default, and advised Plaintiff that she had 30 days to cure the default

and that if she failed to do so, the mortgage payments would be accelerated.  (Mot. Br. at 12-13,

citing App. at 18, 20-21, 23, 65-69.)  The letter was sent by certified mail and received by Plaintiff.

(Mot. Br. at 13, citing App. at 18, 20-21, 65-69.)  Defendant also points to Plaintiff's admissions that

Defendant provided her the opportunity and information necessary to cure the default associated

with her loan.  (*Id.*, citing App. at 23.)[4]

To show that it sent Plaintiff a notice of acceleration and sale, Defendant points to a letter

dated March 1, 2010, informing Plaintiff that Defendant had elected to accelerate the maturity of the

debt and that the property would be sold at a foreclosure sale on April 6, 2010.  (*Id.*, citing App. at

18, 70-75, 92-97.)  Attached to the letter is a notice of substitute trustee sale providing additional

details about the foreclosure sale.  (*Id.*)  Plaintiff received a copy of the notice sent via certified mail.

---

[4] Defendant's requests for admissions to Plaintiff were deemed admitted on October 26,2011, after she failed to respond
to discovery. (*See* doc. 38.)

(Mot. Br. at 13, citing App. at 20-21, 99.)  Defendant also points to Plaintiff's deemed admissions that she received all required foreclosure notices, that Defendant did not violate Chapter 51 of the Texas Property Code, and that she does not have a meritorious breach of contract claim against Defendant.  (Mot. Br. at 13-14, citing App. at 23, 27, 28.)

Given this evidence, Defendant has met its summary judgment burden to show that there is no genuine issue of material fact with respect to Plaintiff's breach of contract claim regarding the alleged violations of the Texas Property Code.  The burden now shifts to Plaintiff to show that there is a genuine material fact issue with respect to her claim.  Because Plaintiff has not responded, she has failed to meet her summary judgment burden, and Defendant is entitled to summary judgment on her breach of contract claim based on the alleged violations of the Texas Property Code.

## B.  HUD Regulations

Defendant next argues that even if the deed of trust incorporated the HUD regulations at issue, Plaintiff cannot establish a violation.  (Mot. Br. at 14-16.)  The complaint alleges that Defendant violated HUD regulations by failing to: (1) conduct, or make a reasonable effort to arrange, a face-to-face meeting with her prior to foreclosure as required by 24 C.F.R. § 203.604(b); (2) accept $8,000 partial payments as required by 24 C.F.R. § 203.556(b); and (3) inform her of other available assistance as required by 24 C.F.R. § 203.604(e)(2), or conduct a loss mitigation evaluation prior to foreclosure as required by 24 C.F.R. §§ 203.605 and 203.501.  (Compl. at 6.)

1.  <u>Face-to-Face Meeting</u>

The HUD regulations require a lender to "have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."  24 C.F.R. § 203.604(b).  A face-to-face interview is not required,

however, if, among other things, "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either. . ." *Id.*, § 203.604(c). Defendant meets its initial summary judgment by pointing to Plaintiff's deemed admissions that it conducted a face-to-face interview with her even though the property was not located within 200 miles of either the mortgagee, the loan servicer, or their branch offices, and it did not maintain staff trained to discuss delinquency and loss mitigation with borrowers within a 200-mile radius of the property. (Mot. Br. at 15, citing App. at 18, 21-22.) By Plaintiff's own deemed admissions, Defendant made reasonable efforts to arrange a face-to-face meeting with her by calling her, sending her a letter by certified mail, and making a trip to her property. (*Id.*, citing, App at 22.) As Plaintiff does not dispute this evidence, Defendant is entitled to summary judgment on her breach of contract claim based on its alleged failure to conduct a face-to-face interview.

2. <u>Partial Payments</u>

The HUD regulations also require a mortgagee to "accept any partial payment and either apply it to the mortgagor's account or hold it in a trust account pending disposition." *See* 24 C.F.R. § 203.556(b). Again, Defendant points to Plaintiff's deemed admissions that she neither tendered nor offered to tender an $8,000 partial payment to Defendant; Defendant did not improperly refuse, reject, or return any loan payments tendered; Defendant accepted all partial payments tendered for the loan; all of her partial payments were either held in a suspense account or applied to her mortgage loan; and Defendant properly credited all loan payments Plaintiff tendered to it. (*See* Mot. Br. at 24, citing App. at 23, 25.) Again, Plaintiff does not create a genuine material fact issue by disputing these deemed admissions with other evidence. Defendant is entitled to summary judgment on her breach of contract claim based on the alleged violation of 24 C.F.R. § 203.556(b).

9

3. <u>Other Available Assistance and Loss Mitigation Evaluation</u>

The HUD regulations also require a mortgagee to "[i]nform the mortgagor of other available assistance, if any," 24 C.F.R. § 203.604(e)(2)(ii), and to conduct a loss mitigation evaluation, *id.*, §§ 203.605 and 203.501. To meet its summary judgment burden to show that it complied with these regulations, Defendant points to Plaintiff's deemed admissions that it conducted a loss mitigation evaluation and informed her of various loss mitigation options on several occasions. (Mot. Br. at 16, citing App. at 22, 25.) It also offers evidence showing that it sent Plaintiff a breach letter advising her of several foreclosure alternatives, including a repayment plan, loan modification, deed in lieu, and short sale, that it offered her a special forebearance plan, and that it attempted to assist her through a loan modification. (*Id.*, citing App. at 22, 24-25, 65-69.) Finally, Defendant offers evidence showing that Plaintiff failed to return the required documents and information to implement the forbearance plan and failed to qualify for a loan modification. (*Id.*, citing App. at 24-25.) By offering evidence showing that there is no genuine material fact issue it conducted a loss mitigation evaluation and informed Plaintiff of other available assistance, Defendant has met its summary judgment burden. Since Plaintiff has failed to rebut or dispute that evidence, summary judgment should be granted in defendant's favor on her breach of contract claim based on the alleged violations of 24 C.F.R. §§ 203.604(e)(2)(ii), 203.605, and 203.501.

**C. Good Faith and Fair Dealing**

Defendant next moves for summary judgment on Plaintiff's claim that it breached the duty of good faith and fair dealing, required by the Texas Uniform Commercial Code (UCC), and implicit in every contract. (Mot. Br. at 38-39.) Defendant argues that Texas courts and the Fifth Circuit have refused to recognize such a duty in the lender-borrower relationship, and even if such a duty

existed, Plaintiff admits that Defendant did not breach it.  (*Id.*)

In Texas, the duty of good faith and fair dealing applies in limited circumstances involving a "special relationship" between the parties, such as between insurers and insureds, principal and agent, joint venturers, and partners.  *See Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992) (citations omitted).  No such duty exists in a lender-borrower relationship.  *See id.*; *see also Fraley v. BAC Home Loan Servicing, LP*, 2012 WL 779130, at *4 (N.D. Tex. Jan 10, 2012) (the Texas Uniform Commercial Code's duty of good faith and fair dealing does not apply to the lender-borrower relationship).

Here, Defendant as the mortgagor, did not owe Plaintiff an implicit duty of good faith and fair dealing, under Texas law, and even if it did, Plaintiff admits that Defendant did not breach that duty.  Summary judgment should therefore be granted on her breach of contract claim based on the alleged breach of the duty of good faith and fair dealing.[5]

## IV.  ANTICIPATORY BREACH OF CONTRACT

To the extent Plaintiff is asserting an anticipatory breach of contract claim separate and apart from her breach of contract claim, Defendant also moves for summary judgment on that claim.  (*See* Mot. Br. at 28-29.)

To prevail on a claim of anticipatory breach in Texas, a plaintiff must show: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party.  *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Pub. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e)).  "An

---

[5]  Since Plaintiff's breach of contract claim is subject to dismissal based on a lack of genuine material fact issue with respect to the third element of the claim, the Court need not consider Defendant's arguments related to the fourth element of the breach of contract claim.  (*See* Mot. Br. at 16-18.)

anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms." *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 631 (N.D.Tex. 2010) (citing *Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 120 (Tex. App.—Houston [14th Dist.] 1984, no writ)). "The declaration of intent to abandon the obligation must be in positive and unconditional terms." *Id.* (citing *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ)). "[T]he party must recognize its duties but refuse to perform them." *Id.*

Defendant argues that Plaintiff's underlying allegations – that Defendant prevented her from performing the contract by refusing to accept her payment and to inform her of the exact amount of the default – are contradicted by her own deemed admissions. (Mot. Br. at 29.) Defendant offers evidence showing that Plaintiff received a pre-acceleration letter notifying her of the default amount as well as instructions on how to cure the default, that Defendant informed her of her right to cure and reinstate the note, that it provided her with an opportunity to reinstate the loan, that Plaintiff never tendered or offered to tender an $8,000 loan payment to Defendant, and that Defendant did not improperly refuse, reject, or return any loan payments Plaintiff tendered to it. (*Id.*, citing App. at 18, 21, 23, 65-69, 28.) Defendant has met its summary judgment burden, and without contrary evidence, it is entitled to summary judgment on the anticipatory breach of contract claim.

## V. VIOLATIONS OF THE TDCPA

Defendant moves for summary judgment of Plaintiff's TDCPA claim on grounds that it is not a debt collector under the TDCPA and did not violate any of its provisions. (Mot. Br. at 19-22.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Bonilla v. America's Servicing Co.*,

2011 WL 3882280, at *4 (S.D. Tex. Sept. 2, 2011) (citing Tex. Fin. Code §§ 392.301-392.306). Among other things, it prohibits a debt collector from using false representations or deceptive means in debt collection or obtaining information concerning a consumer.  Tex. Fin. Code § 392.304(19). It also prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt."  *Id.*, § 392.304(a)(8).  It further prohibits a debt collector from using unfair or unconscionable means by "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  *Id.*, § 392.304(a)(2). Finally, it prohibits a debt collector from "threatening to take an action prohibited by law.  *Id.*, § 392.301(a)(8).

The TDCPA defines a "debt collector" as "a person who directly or indirectly engages in debt collection."  *Id.*, § 392.001(6).  A debt-collector under the TDCPA encompasses a creditor collecting its own debts as well as a third-party debt-collector.  *See id.*, §§ 392.001(3), (5)-(7); *Fraley*, 2012 WL 779130, at *5 (citing  *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex. App.—Dallas 1996)).  The definition of a third-party debt collector under the TDCA tracks the definition of a debt collector under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6), and "does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Cervantes v. U.S. Bank Nat'l Ass'n*, 2012 WL 1605558, at *4 (N.D. Tex. May 8, 2012) (citing *CA Partners v. Spears*, 274 S.W.3d 51, 78-79 (Tex. App. 2008, pet. denied)).  Accordingly, if a debt is in default at the time the assignee acquires his interest in the debt, he is a third-party debt collector within the contemplation of the TDCPA.  *See CA Partners*, 274 S.W.3d at 79.

Here, Plaintiff alleges that Defendant is a debt collector withing the meaning of the TDCPA and has violated provisions of the TDCPA.  (Compl. at 10-13.)  Even assuming that Defendant qualifies as a debt collector under the TDCPA, according to Plaintiff's own deemed admissions, Defendant never threatened to take action prohibited by law in connection with her loan, collected or attempted to collect any charges not expressly authorized by the loan documents, misrepresented the character, extent, or amount of debt associate with loan, or used any deceptive means to collect the debt associated with the loan.  (App. at 24-30.)  Based on the admissions, Defendant has met its summary judgment burden.  (*See* Mot. Br. at 19-22.)  Since Plaintiff does not provide any evidence to dispute the admissions, Defendant is entitled to summary judgment on her TDCPA claim.

## VI. VIOLATIONS OF THE DTPA

Defendant argues that Plaintiff's DTPA claim is derivative of her TDCPA claim and fails for the same reasons as her TDCPA claim.  (Mot. Br. at 22.)  It also argues that Plaintiff does not qualify as a "consumer" under the DTPA.  (*Id.* at 22-23.)

The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  Plaintiff has asserted her claim under section 392.404(a) of the Texas Finance Code, which provides that a violation of the TDCPA is a deceptive trade practice under the DTPA.  (Compl. at 12); *Fraley*, 2012 WL 779130, at *5.  As found already, there is no genuine material fact issue that Defendant violated the TDCPA.  Therefore, there is no genuine material fact issue with respect to the second element of Plaintiff's DTPA claim.

14

Accordingly, summary judgment should be granted on her DTPA claim as well.[6]

## VII. UNREASONABLE COLLECTION EFFORTS

Defendant moves for summary judgment on Plaintiff's unreasonable collection efforts claim on grounds that it did not intentionally engage in a course of egregious or unreasonable collection activity.  (Mot. Br. at 24-25.)

Unreasonable collection is an intentional tort under Texas law.  *Narvaez*, 757 F. Supp. 2d at 635 (citing *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)).  "The elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."  *Id.*  To recover on a claim for unreasonable collection efforts, a plaintiff must show that the defendant's "actions in attempting to collect on the debt were part of 'a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'"  *Defranceschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at *6 (N.D. Tex. Aug. 31, 2011) (quoting *EMC Mortg.*, 252 S.W.3d at 868-69).  Whether the conduct is unreasonable is judged on a case-by-case basis.  *B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009) (citing *Woodrum v. Bradley*, 1990 WL 151264, at *4 (Tex. App.—Houston[14th Dist.] Oct. 11, 1990, writ denied)).

Defendant contends that Plaintiff cannot demonstrate the requisite malicious intent because she admitted it acted in good faith with respect to the loan and did not knowingly, intentionally, or maliciously violate any laws.  (Mot. Br. at 24, citing App. at 30.)  She also admitted that Defendant made numerous attempts to assist her, and that she failed to cooperate with Defendant.  (*Id.*, citing App. at 22, 24-25.)  Finally, her unsworn allegations in support of her claim have been disproved

---

[6] Since Plaintiff has failed to create a genuine material fact issue with respect to the second element of her DTPA claim, it is unnecessary to consider whether she qualifies as a consumer under the DTPA.

by her own deemed admissions.  (Mot. Br. at 24.)  By directing the Court's attention to these facts, Defendant has met its summary judgment burden, and without conflicting evidence offered by Plaintiff, is entitled to summary judgment on Plaintiff's unreasonable collection efforts claim.

## VIII.  SUIT TO QUIET TITLE AND TRESPASS TO TRY TITLE

Defendant argues that Plaintiff's suit to quiet title and trespass to try title claims fail because she has offered no evidence that she possesses superior title to the property and has failed to satisfy the tender requirement for the rescission of a foreclosure sale.  (Mot. Br. at 25-28.)

A suit to quiet title, also known as a suit to remove cloud from title, "relies on the invalidity of the defendant's claim to property."  *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  A plaintiff must show that: (1) she has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.  *See U.S. Nat'l Bank Ass'n v. Johnson*, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011) (citations omitted).  A plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference."  *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied).  The plaintiff must recover on the strength of his or her own title, not on the weakness of his adversary's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property."  Tex. Prop. Code § 22.001.  "In general, the action of trespass to try title suit is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession."  *See Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex.

16

App.— Corpus Christi 1978, no writ.) (citing Tex. R. Civ. P. 783).  To prevail on a trespass to try title claim, a plaintiff must "usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).  As with a suit to quiet title, "the plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title." *Rocha*, 574 S.W.2d at 235 (citing *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961); *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Defendant argues that it is has superior title to the property because it purchased the property at the foreclosure sale, that Plaintiff cannot prove the foreclosure sale is void or voidable or should otherwise be set aside, and that she has no evidence she possesses superior title from a common source. (Mot. Br. at 27.)  Defendant points out that it obtained superior title as a matter of law when it purchased the property at the foreclosure sale, and that Plaintiff's chain of title was cut off by the trustee's deed executed in Defendant's favor.  *See Casstevens v. Smith*, 269 S.W.3d 222, 235 (Tex. App.—Texarkana 2008, pet. denied).  Plaintiff, on the other hand, has failed to provide any evidence showing that the foreclosure sale was void or voidable, or that she is entitled to the rescission of the foreclosure sale.  Texas courts have held that tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession of the property and claims title under a void foreclosure sale.  *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).  It is a principle of equity that a person must have done equity in order to obtain equitable relief.  *Grella v. Berry*, 647 S.W.2d 15, 18 (Tex. App.—Houston [1st Dist.] 1982, no writ).  Plaintiff has offered no evidence to rebut her admissions that she has not made mortgage or rent payments to Defendants, and has not tendered

17

the amount due on the loan, and cannot.  (*See* App. at 18-20, 26.)  Her suit to quiet title and trespass

to try title claims therefore fail, and Defendant is entitled to summary judgment.

## IX.  WRONGFUL FORECLOSURE

To the extent Plaintiff's complaint seeks to assert a wrongful foreclosure claim, Defendant

moves for summary judgment on the claim on grounds that it did not fail to comply with statutory

or contractual terms or otherwise act inequitably towards Plaintiff, and that Plaintiff is not entitled

to the remedies available through a wrongful foreclosure claim.  (Mot. Br. at 31-32.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud,

or unfairness in the conduct of a foreclosure sale.  *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D.

Tex. 2001) (citation omitted).  "The elements of a wrongful foreclosure claim are: (1) a defect in the

foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection

between the defect and the grossly inadequate selling price."  *Sauceda v. GMAC Mortg. Corp.*, 268

S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.); *accord Pollett v. Aurora Loan Servs.*,

2011 WL 6412051, at *1 (5th Cir. 2011).  To meet the first element of the claim, the mortgagor

must show that the mortgagee either failed to comply with statutory or contractual terms, or

complied with such terms, yet took affirmative action that detrimentally affected the fairness of the

foreclosure proceedings.  *See Sky/RGS Props., Ltd. v. First Nat'l Bank*, 1996 WL 707014, at *3

(N.D. Tex. Dec. 4, 1996) (citing *First State Bank v. Keilman*, 851 S.W.2d 914, 921-22 (Tex.

App.—Austin 1993, writ denied)).  A plaintiff asserting a wrongful foreclosure claim is limited to

"two alternative remedies."  *Burnette v. Wells Fargo Bank, N.A.*, 2010 WL 1026968, at *2 (E.D.

Tex. Feb. 16, 2010) (citations omitted). "He may elect to: (1) set aside the void trustee's debt; or (2)

recover damages in the amount of the value of the property less indebtedness."  *Id.*

Defendant argues, based on the evidence discussed already, that it did not fail to comply with any statutory or contractual conditions governing the foreclosure sale, and did not otherwise act inequitably towards Plaintiff.  (Mot. Br. at 31.)  Defendant also argues that Plaintiff is not entitled to rescission of the foreclosure sale because she has not tendered all amounts due and owing under the note and deed of trust and cannot, and is not entitled to damages because she continues to reside in the property.  (*Id.*)  "Under a wrongful foreclosure cause of action for damages, recovery  is premised upon one's lack of possession of real property."  *Burnette*, 2010 WL 1026968, at *2 (citation and internal quotation marks omitted)).  "[T]herefore, individuals never losing possession of the property cannot recover [damages] on a theory of wrongful foreclosure."  *Id.*  By pointing to the applicable law and evidence in support of its assertions, Defendant has met its initial summary judgment burden to show that there is no genuine issue of material fact with respect to Plaintiff's wrongful foreclosure claim.  Since Plaintiff does not meet her burden to create a genuine material fact issue with respect to her claim, Defendant is entitled to summary judgment on that claim.

## X.  WAIVER

Regarding Plaintiff's assertion in her complaint that Defendant waived its right to foreclose, Defendant contends that waiver is an affirmative defense and not a cause of action, that the deed of trust specifically prohibits any claim of waiver, and that Defendant was authorized to, and did not waive its right to, accelerate the debt and foreclose on the property.  (Mot. Br. at 30.)

"Waiver is an affirmative defense, not a cause of action, and does not operate to create liability."  *See Thomas v. Compass Bank*, 2002 WL 1340333, at *4 (Tex. App.—Houston [1st Dist.] June 20, 2002, no pet.).  Moreover, Plaintiff's waiver argument is based on unsworn allegations that Defendant breached the contract and the Texas Property Code and prevented her from performing

the conduct – allegations that have been disproved by her deemed admissions, as discussed. (Compl. at 7-8.)  As Plaintiff has not presented any evidence in support of her waiver assertions, the assertions, although not constituting a claim, also fail.

## XI.  DECLARATORY RELIEF

Defendant moves for summary judgment on Plaintiff's request for a declaratory judgment on two grounds: the request is remedial in nature and cannot survive without a viable cause of action, and the request is duplicative of her breach of contract claim.  (Mot. Br. at 32-33.)

Plaintiff's requests for declaratory relief is made pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, which allows a federal court to declare the rights and legal relations of any interested party.  *See Wilkerson v. Citimortgage, Inc.*, 2011 WL 6937382, at *9 (N.D.Tex. Oct. 24, 2011).  The request seeks a finding that Defendant breached the deed of trust and that its foreclosure of the property was wrongful.  Plaintiff is not entitled to a consideration of the request, however, as the claim is duplicative of her breach of contract and wrongful foreclosure claims.  *See Narvaez*, 757 F.Supp.2d at 636 (declining to consider the plaintiff's request for declaratory judgment and granting summary judgment on it where the request was redundant and duplicative of his breach of contract claim).  In addition, a declaratory judgment is unavailable, where as here, there is no viable claim for relief.  *See Wilkerson*, 2011 WL 6937382, at *9 (citing *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) for the proposition that the availability of a declaratory judgment depends upon the existence of a judicially remediable right).  Summary judgment should therefore be granted on Plaintiff's request for declaratory judgment.

## XII.  ACCOUNTING

Defendant moves to dismiss Plaintiff's request for an accounting of all transactions on her

mortgage loan on grounds that the accounting is a remedy, not a cause of action, and is not available, where as here, there is no viable cause of action.  (Mot. Br. at 32-33.)

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Wilkerson*, 2011 WL 6937382, at *9 (citing *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.—Corpus Christie, 2001), abrogated on other grounds as recognized in *Buck v. Palmer*, 2010 WL 5167704 (Tex. App.—Corpus Christi 2010, pet filed March 4, 2011)).  Plaintiff's complaint appears to seek accounting as a remedy, and therefore its availability depends on a viable of cause of action, which does not exist in this case.  (*See* Compl. at 13, 15.) Summary judgment should be granted on Plaintiff's request for an accounting as well.  *See Wilkerson*, 2011 WL 6937382, at *9 (dismissing request for an accounting in the context of a Rule 12(b)(6) motion because the request was not asserted as a cause of action).

## XIII.  ATTORNEY'S FEES

Defendant also moves for summary judgment on Plaintiff's request for attorney fees arguing that she has not established a viable cause of action to support her request.  (Mot. Br. at 33.)

Because Defendant is entitled to summary judgment on all of Plaintiff's claims, its motion for summary judgment on the request for attorney's fees should also be granted.  *See Lusk v. Wells Fargo Bank, Nat'l Ass'n*, 2012 WL 1836342, at *6 (E.D. Tex. May 21, 2012) (dismissing request for attorney's fees because all of the plaintiffs' claims were dismissed on summary judgment).

## XIV.  RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**, and all of Plaintiff's claims against it should be **DISMISSED with prejudice**.

**SO RECOMMENDED on this 6th day of June, 2012.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

22